UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NATALIE OKTEN,** *on behalf of herself and those similarly situated,* | Civ. No.: 22-443 |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **ARS NATIONAL SERVICES, INC.; and JOHN DOES 1 to 10,** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court following the parties' briefing on whether Plaintiff Natalie Okten ("Plaintiff" or "Okten") has Article III standing to bring her mail vendor disclosure claims in federal court. ECF Nos. 20-22. Also before the Court is Plaintiff's request for a stay in the proceedings. ECF No. 25. For the reasons set forth below, Plaintiff's request for a stay is **DENIED** and this action is **REMANDED** to the Superior Court of New Jersey, Law Division, Essex County for lack of subject matter jurisdiction.

## I.   BACKGROUND

On December 22, 2021, Okten initiated this putative class action against Defendant ARS National Services, Inc. ("Defendant" or "ARS") in the Superior Court of New Jersey, Law Division, Essex County. Compl., ECF No. 1-1. In her complaint, Okten asserts that ARS, a collection agency, mailed two collection letters to Okten using a third-party letter vendor. Compl. ¶¶ 23, 29, 32. Okten contends that by using the letter vendor, ARS "recklessly disclosed Okten's personal identifying information and private information about her debt to a third party without [her] prior consent," including the "account number associated with the debt and the alleged balance due." Compl. ¶¶ 34-35. Okten also alleges that ARS used the letter vendor to send similar collection letters to other New Jersey consumers. Compl. ¶¶ 39, 41. For these alleged disclosures, Okten seeks a declaratory judgment and injunctive relief and alleges negligence, invasion of privacy, violations of the New Jersey Consumer Fraud Act ("CFA"), and violations of the Federal Debt Collection Practices Act ("FDCPA"). Compl. ¶¶ 56-89.

1

## II.    PROCEDURAL HISTORY

ARS timely removed this case on January 28, 2022, invoking this Court's federal question jurisdiction by virtue of Okten's FDCPA claim. Notice of Removal ¶¶ 3, 5, ECF No. 1. ARS then moved to dismiss the complaint on March 18, 2022. ECF No. 9. However, the case was held pending the outcome of a motion to consolidate filed in *Daye v. Allied Interstate, LLC*, No. 21-7582 (D.N.J. Aug. 26, 2022), where Okten's counsel sought to consolidate 32 of its FDCPA actions, including the instant case, for the "limited purpose of adjudicating . . . subject matter jurisdiction on plaintiff's FDCPA mail vendor claim[.]" Pl.'s Notice, ECF No. 16. *Daye* was ultimately remanded to state court for lack of subject matter jurisdiction and, consequently, the consolidation motion was denied as moot. *Daye*, No. 21-7582, ECF No. 40 at 6. As a result, this Court ordered supplemental briefing on the matter of jurisdiction. ECF No. 19. ARS then withdrew its motion to dismiss pending the Court's determination on the jurisdictional matter. ECF No. 23. On January 18, 2023, after the parties had already filed their supplemental briefs, Okten asked this Court to stay the proceedings pending the outcome of *Barclift v. Keystone Credit Servs., LLC*, No. 22-1925 (3d Cir. argued March 30, 2023). Pl.'s Ltr., ECF No. 25. ARS opposes Okten's request for a stay. Def.'s Ltr., ECF No. 26. Okten's request for a stay, along with the parties' supplemental briefs regarding subject matter jurisdiction, are now before the Court.

## III.    REQUEST FOR STAY

"A stay of a civil case is an 'extraordinary remedy.'" *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998) (citation omitted). "The party seeking a stay of civil litigation bears the burden to show that the stay would be appropriate." *Konopca v. Ctr. for Excellence in Higher Educ., Inc.*, No. CV155340, 2016 WL 4644461, at *2 (D.N.J. Sept. 6, 2016) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)). "Thus, 'the supplicant for a stay must make out a clear case of hardship or inequity in being required to go forward[.]'" *Ullman v. Express Scripts, Inc.*, No. CIV.A. 06-3065 (MLC), 2010 WL 421094, at *4 (D.N.J. Feb. 2, 2010) (quoting *Landis*, 299 U.S. at 255). In determining whether a stay is appropriate, "the Court considers whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy." *Id.* "The Court also considers whether the two actions in question involve the same parties and issues and whether they are pending in the same court." *Id.*; *see also Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 542 (D.N.J. 2008).

Importantly, Okten has not alleged any hardship or inequity if forced to proceed. She argues only that the Third Circuit's decision in *Barclift* would be dispositive to the

instant case. Pl.'s Ltr. at 1. In its opposition to the stay, ARS argues that procedural and factual differences between *Barclift* and this case warrant a denial of Okten's request. Def.'s Ltr. 1-2.

Here, if a stay is granted, "there is the potential for a lengthy delay, as it is uncertain when the [Third] Circuit will issue a ruling." *Konopca*, 2016 WL 4644461, at *2. The overall delay could be substantial, as this case's proceedings have already been held subject to the resolution of the motion to consolidate in *Daye v. Allied Interstate, LLC*, No. 21-7582 (D.N.J. Aug. 26, 2022) regarding the same standing issue briefed here. Further, this case and *Barclift* do not deal with identical issues or parties. While the issue being argued in *Barclift* is relevant to this case—Article III standing in the context of FDCPA "mail vendor" disclosure claims—Okten also asserts state law claims that were not raised in *Barclift* and would not be resolved by the appellate court's decision. Additionally, a stay would not significantly further judicial economy interests. Because the two cases involve different parties, this Court will still need to review the facts of the instant case to determine whether it has subject matter jurisdiction, regardless of the outcome in *Barclift*. Due to these considerations, the Court finds that Okten has not sufficiently shown that a stay of the proceedings is warranted and will proceed with its review of the parties' supplemental briefs regarding subject matter jurisdiction.

## IV. LEGAL STANDARD

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. One element of this case-or-controversy requirement is that ARS, as the removing party, must establish that Okten has standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing the[] elements [of standing]."); *see also Hammer v. Vital Pharms., Inc.*, No. CV114124, 2015 WL 12844442, at *2 (D.N.J. Mar. 31, 2015) ("Defendant invoked federal jurisdiction by removing the case from state court to federal court, and thus, Defendant has the burden of establishing standing."). "At the pleading stage, [it] must [be] show[n] that the factual allegations in the complaint plausibly support the existence of standing." *Pagan, et al. v. Convergent Outsourcing, Inc., et al.*, No. 21-12130, ECF No. 17 at 3 (D.N.J. March 30, 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021)). To satisfy Article III's standing requirements, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). To establish injury in fact, it must be shown that the plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). Concrete injuries can be tangible or intangible. *See TransUnion LLC*, 141 S.

Ct. at 2204. "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). The Court presumes that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 288 (3d Cir. 2018) (citations and quotation marks omitted).

## V.   ANALYSIS

The parties both assert that Okten has standing to file her claims in this Court but differ in their reasoning. Okten argues that the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) did not change the prevailing jurisprudence on Article III standing. Specifically, Okten argues that in order to plead "a concrete harm sufficient [to establish] standing[,]" consumers "need not plead or prove any additional harm [other] than that their private information was unlawfully disclosed[.]" Pl.'s Br. 24, ECF No. 20. Okten contends that a mere invasion of a consumer's rights under the FDCPA is sufficient to establish standing. Pl.'s Br. 12. In its response brief, ARS acknowledges that *TransUnion* has clarified the requirements for establishing a concrete injury. Def.'s Br. 6, ECF No. 21. However, ARS argues that Okten has nevertheless alleged a concrete harm, rather than a mere statutory violation, by alleging that she has suffered "ascertainable loss" and "compensable harm." Def.'s Br. 7.

The Court disagrees with Okten's position that to establish Article III standing, a consumer need not plead any additional harm other than the unlawful disclosure of their private information. The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341). "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." *Id.* at 2200 (quoting *Spokeo*, 578 U.S. at 340-41).

Okten points to *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625 (3d Cir. 2021) as an example of where the Third Circuit allegedly concluded that a consumer had standing to raise his FDCPA claim "without showing any harm other than the violation of his statutory rights." Pl.'s Br. 15. However, *Morales* does not dispense with the requirement that a harm must be concrete. The court in *Morales* states only that "*[i]f a statutory harm is concrete*, no 'additional harm beyond the one Congress has identified' is required." *Morales*, 859 F. App'x at 626-27 (emphasis added and

omitted) (citing *Spokeo*, 578 U.S. at 342). In fact, the court explicitly stated that "not all transgressions create standing—procedural gaffes that cause no 'concrete' injury fall short of Article III's requirements." *Id.* at 626. Ultimately, the *Morales* court held that the plaintiff had standing to bring an FDCPA claim because a debt collector mailed an envelope that had a QR code on it, which "disclosed [plaintiff's] protected information" in a way that "enable[d] public access to [plaintiff's] account." *Id.* at 627-28. As discussed *infra*, Okten here has not alleged a similar disclosure to the public that is sufficient to establish a concrete harm for standing, and thus *Morales* is inapposite.

Okten also asserts that the Supreme Court's decision in *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) concludes that "*every* violation of the law necessarily presumes an injury." Pl.'s Br. 17. However, because the *Uzuegbunam* Court's "holding concern[s] only redressability[,]" and not injury, it is not controlling here. 141 S. Ct. at 802. The Court is also not swayed by the post-*TransUnion* cases cited favorably by Okten because as she notes, they rely on pre-*TransUnion* authority. Pl.'s Br. 17.

Having found that Okten must plead harm beyond a mere technical violation of the FDCPA to establish Article III standing, the Court must now assess whether Okten's alleged harm "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts[.]" *TransUnion*, 141 S. Ct. at 2200 (quoting *Spokeo*, 578 U.S. at 340-41). Courts in this district have consistently found "mail vendor" FDCPA claims like Okten's to "most closely resemble[] the privacy cause of action for public disclosure of private facts." *Madlinger v. Enhanced Recovery Co., LLC*, No. CV 21-00154 (FLW), 2022 WL 2442430, at *7 (D.N.J. July 5, 2022). "New Jersey courts have instructed that to state a claim for public disclosure of private facts, a plaintiff must demonstrate (1) that the defendant has given publicity to matters that actually were private, (2) that dissemination of such facts would be offensive to a reasonable person and (3) that the public has no legitimate interest in being apprised of the facts publicized." *Id.* (citations omitted); *see also Romaine v. Kallinger*, 537 A.2d 284, 292 (N.J. 1988). The standard for "publicity" means that "information is made public when it is 'communicat[ed] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . . .'" *Rohl v. Pro. Fin. Co., Inc.*, No. CV2117507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022) (citations omitted).

Here, Okten's mail vendor theory of harm fails to allege a concrete harm because she fails to allege that her personal information was given any publicity. Okten alleges, in a conclusory fashion, that she suffered "ascertainable loss" and "compensable loss" because her information was disclosed to a third-party mail vendor company. Compl. ¶¶ 32, 58, 73. However, Okten has not alleged that her private information was communicated to the public at large, or to more than a single person. Indeed, it is not argued "that *anyone* actually read [her] information (rather than merely processed it) or

5

that there has otherwise been publicity to any meaningful degree." *Pagan*, No. 21-12130, ECF No. 17 at 5 (emphasis added); *cf. TransUnion*, 141 S. Ct. at 2210 n.6 (noting in dicta that disclosures to printing vendors have not been recognized as actionable "publications" for purposes of defamation and recognizing a distinction between information being "actually read" and "merely processed"). As such, Okten has "identified no 'downstream consequences'" from the alleged disclosure. *TransUnion LLC*, 141 S. Ct. at 2214 (citation omitted).

While Okten does allege that ARS "published a list of debtors, including Plaintiff," the complaint provides no information about the alleged list beyond its conclusory claims, such as where the list was published or if even more than a single person was able to see or read the list. Compl. ¶ 42. Even if a small group of mail vendor employees were able to access Okten's information, such dissemination is still not enough to become public knowledge. *See Foley v. Medicredit, Inc.*, No. CV2119764, 2022 WL 3020129, at *3 (D.N.J. July 29, 2022).

The Court therefore finds that Okten has not alleged "an injury beyond statutory violations, which the Supreme Court has made clear is not enough to confer [Article III] standing." *Rohl*, 2022 WL 1748244, at *4 (citing *TransUnion LLC*, 141 S. Ct. at 2205). Reenforcing this Court's decision "are the numerous district court cases that have weighed in and found generally pled 'mail vendor' theories insufficient for Article III standing under the FDCPA" based on the plaintiffs' failure to allege any publication to the public at large. *Id.* at *3; *see also Nuamah-Williams v. Frontline Asset* Strategies, *LLC*, No. 2:21-CV-15440 (WJM), 2023 WL 1470057, at *2 (D.N.J. Feb. 2, 2023) (collecting cases), *appeal docketed*, No. 23-1404 (3d Cir. March 8, 2023).

As Okten does not have Article III standing to bring this case, the Court will remand this action to the Superior Court. *See Pagan*, No. 21-12130, ECF No. 17 at 5 (first citing 28 U.S.C. § 1447(c); and then citing *Katz v. Six Flags Great Adventure*, LLC, No. 18-116, 2018 WL 3831337, at *9 (D.N.J. Aug. 13, 2018)).

## I.      CONCLUSION

For the reasons set forth above, Plaintiff's request for a stay is **DENIED** and this action is **REMANDED** to the Superior Court of New Jersey, Law Division, Essex County for lack of subject matter jurisdiction. An accompanying Order follows.

Date: May ___, 2023

WILLIAM J. MARTINI, U.S.D.J.